# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| PAUL LEE JARRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:17-CV-306-TLS-APR |
| | ) |
| ANDREW SAUL, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Paul Lee Jarrell seeks review of the final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits and supplemental security income. For the reasons set forth below, the Court finds that remand is required.

## PROCEDURAL BACKGROUND

On December 27, 2013, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income. AR 206, 208–212, ECF No. 11.[1] In both applications, Plaintiff alleged disability beginning February 23, 2011. *Id*. 208. The claims were denied initially and on reconsideration. *Id*. 138, 144. Plaintiff requested a hearing, which was held before the Administrative Law Judge (ALJ) on May 16, 2016. *Id*. 26, 154, 156, 169. On June 2, 2016, the ALJ issued a written decision and found Plaintiff not disabled. *Id.* 26–37. On July 18, 2017, Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision and remand for further proceedings. Plaintiff filed an opening

---

[1] The Court's citation to the Administrative Record is to the bates-stamped number in the bottom right-hand corner of each page and not to the Court's CM/ECF electronic page header.

brief [ECF No. 14], the Commissioner filed a response brief [ECF No. 17], and Plaintiff filed a reply brief [ECF No. 20].

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b). In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 23, 2011, the alleged onset date. AR 28.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Here, the ALJ determined that Plaintiff has the severe impairments of bipolar disorder and a marijuana disorder. AR 28.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." *Id*.

2

§§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listings 12.04 and 12.06. AR 28–30.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine, repetitive tasks, with occasional interactions with coworkers, supervisors, and only brief superficial interactions with the public. The claimant must avoid work that is in near proximity to groups of people (defined as ten or more people). The claimant is limited to few workplace changes.

AR 30–31.

After assessing the RFC, the ALJ moves to step four and determines whether the claimant can do her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). In this case, the ALJ found that Plaintiff is unable to perform any past relevant work under 20 C.F.R. §§ 404.1565, 416.965. AR 35.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy

given the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). Here, the ALJ found that Plaintiff is not disabled because Plaintiff can perform significant jobs in the national economy of "hand packer," "dishwasher," and "waxer floor." AR 36. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1512, 416.912.

Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1–3, 202, 203. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the

Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, Plaintiff seeks reversal of the ALJ's decision and asks for either an award of benefits or remand for further proceedings. In support, Plaintiff argues that the ALJ erred in weighing the opinion of treating psychiatrist Dr. Hunter and that the error was compounded by a failure to properly assess the medical evidence. Plaintiff then reasons that, if the ALJ had given

5

controlling weight to Dr. Hunter's opinion, the ALJ would have found that Plaintiff meets Listing 12.04. Next, Plaintiff argues that the ALJ failed to incorporate his moderate limitations in concentration, persistence, and pace in the hypothetical to the vocational expert. Finally, Plaintiff contends that the ALJ's finding at step five was not supported by substantial evidence in relation to his ability to stay on task throughout a workday. The Court finds that remand is required for the ALJ to properly account for Plaintiff's moderate limitations in concentration, persistence, and pace.

### A.     Concentration, Persistence, and Pace

At step three of the sequential analysis, the ALJ found that Plaintiff has moderate limitations in concentration, persistence, and pace. AR 29–30. In support, the ALJ relied on Plaintiff's report that he can pay attention for about 20 minutes at a time but that he does not finish what he starts. *Id*. 30. The ALJ also noted Plaintiff's wife's report that Plaintiff starts a task, gets frustrated with the task, and then needs to be reminded to finish the task; that Plaintiff does not handle changes in routine well; and that Plaintiff gets angry if a routine is changed. *Id*. The ALJ noted Plaintiff's report that he does better with spoken instructions as opposed to written instructions. *Id*.

In formulating the mental RFC, the ALJ limited Plaintiff to "simple, routine, repetitive tasks" with few workplace changes. AR 30–31. The ALJ also limited Plaintiff to occasional interactions with coworkers and supervisors and only brief superficial interactions with the public. *Id*. 31. Finally, the ALJ indicated that Plaintiff must avoid work that is in near proximity to groups of people, defined by the ALJ as ten or more people. *Id*. At the hearing, the ALJ posed the following hypothetical to the vocational expert:

> Okay, I'm going to give you a few hypotheticals. As your first hypothetical, please assume an individual of the same age, education and work experience as the claimant. This hypothetical individual would have no exertional limitations, but would be limited to simple, routine, repetitive tasks with only occasional interaction with coworkers and supervisors and only brief, superficial interaction with the public. No work in near proximity to groups of people, which I'll define as ten or more. And, this individual would require jobs with few workplace changes. Would there be any of the claimant's past relevant work that such a hypothetical individual could do?

AR 77–78.

Plaintiff argues that the hypothetical to the vocational expert is flawed because it fails to account for his moderate difficulties in concentration, persistence, and pace as supported by the evidence and found by the ALJ. The Court agrees. First, a long line of Seventh Circuit cases requires that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (explaining that the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'").

Second, the Seventh Circuit has made it clear that a limitation in a hypothetical to "simple, routine, repetitive tasks" does not account for limitations in concentration, persistence, and pace. *See Crump*, 932 F.3d at 570 (citing *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019)); *Varga*, 794 F.3d at 814; *Yurt*, 758 F.3d at 858–59; *O'Connor-Spinner*, 627 F.3d at 620.

7

This is because a limitation to "simple, routine, repetitive tasks," which is a reference to "unskilled work," does not necessarily exclude from the vocational expert's consideration jobs that present significant problems of concentration, persistence, and pace. *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017) (citing 20 C.F.R. § 404.1568). Unskilled work is defined as simple work that can be learned by demonstration in less than 30 days. 20 C.F.R. §§ 404.1568(a), 416.968. However, whether work can be learned over a certain period of time "is unrelated to the question of whether an individual with mental impairments—e.g., with difficulties maintaining concentration, persistence, or pace—can perform such work." *Varga*, 794 F.3d 814; *see also Lanigan*, 865 F.3d at 565–66; *Yurt*, 758 F.3d at 858–59.

In this case, the ALJ found the moderate limitation in concentration, persistence, and pace based in part on Plaintiff's ability to pay attention for only 20 minutes, Plaintiff not finishing what he starts, and Plaintiff's need to be reminded to complete tasks. AR 30. Thus, although the limitation in the RFC and in the hypothetical to "simple, routine, repetitive" tasks corresponds with Plaintiff's ability to do unskilled work, the hypothetical offers no information to the vocational expert about Plaintiff's difficulties with concentration and persistence based on the facts noted by the ALJ. No other aspect of the RFC or the hypothetical accounts for these moderate limitations.

Notably, the other aspects of the hypothetical that limit contact with coworkers, supervisors, and the public primarily go to Plaintiff's limitations in social interaction. *See Yurt*, 758 F.3d at 858–59 (reiterating the court's rejection of "the notion that a hypothetical . . . confining the claimant to simple, routine tasks *and limited interactions with others* adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace").

Likewise, the limitation to "few workplace changes" goes to Plaintiff's difficulty handling change and his anger with changes in routine but does not address his difficulty focusing and completing a task. *See Varga*, 794 F.3d at 815 (finding that limitations to simple work-related decisions, few work place changes, no more than occasional interaction with coworkers or supervisors, and work free of fast-paced production requirements did not account for the plaintiff's impairments of anxiety and depression that impacted concentration, persistence, and pace).

The Seventh Circuit has "stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity, and vocational experts must consider 'deficiencies of concentration, persistence, and pace.'" *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011) (quoting *O'Connor-Spinner*, 627 F.3d at 619); *see also Winsted*, 923 F.3d at 476–77. Remand is required for the ALJ to present a hypothetical to the vocational expert that incorporates all of Plaintiff's limitations, including those moderate limitations in concentration, persistence, and pace, as supported by the record.

Relatedly, part 5 of Plaintiff's brief addresses the vocational expert's testimony that, if an individual is off task more than five percent of a workday, the individual could not sustain employment. *See* AR 87. Plaintiff contends that someone with moderate deficiencies in concentration, persistence, and pace, which is defined as being able to sustain performance for 1/3 to up to 2/3 of an 8-hour workday, *see id.* 386, would not be able to sustain employment based on the vocational expert's testimony. On remand, if the same testimony is elicited after the ALJ has accounted for the Plaintiff's moderate limitations in concentration, persistence, and pace, the ALJ will have an opportunity to explore this issue with the vocational expert.

B.  **Consideration of the Medical Evidence**

In the first section of his brief, Plaintiff argues that the ALJ "cherry picked" the record to discuss only the evidence that supported a finding of a denial of benefits and that the ALJ "mischaracterized the medical evidence." Pl.'s Br., p. 8, ECF No. 14. The Court finds that neither description of the ALJ's discussion of the medical evidence is accurate. First, Plaintiff has not identified any evidence that the ALJ "mischaracterized." The ALJ accurately summarized the treatment records discussed in the opinion. *See* AR 31–34. As for "cherry picking," this is not a case in which the ALJ ignored lines of evidence or only discussed minor details in support of the RFC to the exclusion of evidence favorable to Plaintiff. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ was not permitted to "cherry-pick" from those mixed results to support a denial of benefits."). Rather, the ALJ discussed the records of Plaintiff's longitudinal improvement with treatment and with medication compliance.

Plaintiff urges that a "closer review of the medical evidence reflects a different overall picture" and identifies three instances in the record that he suggests demonstrate cherry picking. Pl.'s Br., p. 9. First, Plaintiff notes that, although he reported in March 2015 that he successfully managed his anxiety and rode the commuter train, as noted by the ALJ, *see* AR 33 (citing AR 521), Plaintiff earlier reported in February 2015 that he had cancelled a train ride due to anxiety, *Id.* 535. Next, although records from January 2015 reflect that Plaintiff was feeling better after his hospitalization in December 2014, as noted by the ALJ, *see id.* 33 (citing AR 550), at a follow up with Dr. Hunter in February 2015, Plaintiff reported feeling a "little bit" better and Dr. Hunter commented that Plaintiff "seems to be responding well to current interventions, but will need to continue to work towards improved coping skills for anger and frustration" and that his

prognosis was still guarded, *id.* 531, 533. Last, Plaintiff notes that, although Plaintiff's mood and affect were calm in February 2016, as noted by the ALJ, *see id.* 34 (citing AR 446), Plaintiff reported his sleep had been poor and he had anxiety about going to a movie with his son, *id.* 444, Plaintiff discussed recent frequent bouts of irritability in April 2016, *id*. 594, and Plaintiff continued to see Dr. Hunter every six weeks, *id.* 444, 456, 471, 490, 495, 506.

Viewing the evidence as a whole, the Court cannot say that these records demonstrate cherry picking; rather Plaintiff is asking the Court to reweigh the evidence. As Plaintiff himself cites in his brief, the regulations regarding mental disorders emphasize a need for longitudinal evidence. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 ¶ 12.00(D)(2) (2017) ("Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish your impairment severity."). The fact that the ALJ did not discuss the specific records identified by Plaintiff does not, by itself, require remand. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (recognizing that an "ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but must build a logical bridge from the evidence to his conclusion" (internal quotation marks omitted)). However, because the Court is remanding on other grounds, the ALJ is directed to consider and discuss this evidence identified by Plaintiff on pages 9–10 of his brief. In that context, the ALJ should consider whether these instances identified by Plaintiff constitute a waxing and waning of symptoms of his bipolar disorder that would cause him to be unable to sustain employment. *See Scott*, 647 F.3d at 740 (citing *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).

C.    **Weight to Opinion Evidence and Step Three Listing 12.04**

Dr. Hunter, Plaintiff's treating psychiatrist, provided an opinion in a Medical Source Statement, indicating that Plaintiff's symptoms include poor memory, mood disturbance, emotional lability, suicidal thoughts, social withdrawal and isolation, decreased energy, manic syndrome, hostility, and irritability. AR 381. Dr. Hunter opined that Plaintiff would have "moderate," "marked," or "extreme" loss of several abilities to perform work-related mental activities. *Id.* 383. Dr. Hunter also opined that Plaintiff would likely be absent from work three or more days per month. *Id.* 382. In the "Functional Limitation" section, Dr. Hunter opined that Plaintiff would have "marked" difficulties in maintaining social functioning, would "often" have deficiencies in concentration, persistence, or pace in the work setting, and would have repeated episodes of deterioration or decompensation in the work setting. *Id.* 384.

Plaintiff argues that the ALJ erred in not giving Dr. Hunter's treating opinion controlling weight, which in turn, Plaintiff argues, resulted in a failure to find that Plaintiff meets Listing 12.04. The treating physician rule, applicable in this case,[2] provides that the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Jelinek*, 662 F.3d at 811 (explaining that, under the "treating physician rule," the opinion of a treating physician "that is consistent with the record is generally entitled to 'controlling weight'"). If an ALJ does not give the treating physician's opinion controlling weight, the ALJ

---

[2] On January 18, 2017, the Commissioner published new regulations, "Revisions to Rules Regarding the Evaluation of Medical Evidence," which addressed 20 C.F.R. §§ 404.1527 and 416.927. However, the new regulations only apply to claims filed on or after March 27, 2017, and the claims in this case were filed in 2013.

must apply the factors set forth in the regulations to determine what other weight to give the opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Yurt*, 758 F.3d at 860 (requiring an explicit discussion of certain § 404.1527(c)(2) factors on remand). The factors are whether there is an examining relationship; whether there is a treatment relationship, and if so, the length of the relationship, the frequency of examination, and the nature and extent of the relationship; whether the opinion is supported by relevant evidence and by explanations from the source; the consistency of the opinion with the record as a whole; whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore*, 743 F.3d at 1127).

Although the ALJ provided analysis that Dr. Hunter's opinion was not consistent with the longitudinal treatment record, the ALJ did not discuss any of the regulatory factors, including the fact that Dr. Hunter is a psychiatrist and the length and nature of the treating relationship. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (remanding because the ALJ, in giving "little weight" to the treating physician opinion and giving "significant weight" to the state agency consultants' opinions, did not mention any of the regulatory factors when the treating physician was a psychiatrist and had treated the plaintiff's schizophrenia for a year and a half). In addition, in finding that Dr. Hunter's treatment notes were essentially normal, the ALJ cited only the records of February 25, 2015, and February 11, 2016, which did include largely normal findings. *See* AR 34 (citing AR 446, 533). On remand, if applicable, the ALJ is directed to

discuss the regulatory factors in explaining the weight given to Dr. Hunter's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Plaintiff also argues that the ALJ's reliance on the March 31, 2014 and August 1, 2014 opinions of the state agency psychological consultants is problematic because the ALJ gave the opinions great weight, yet the consultants did not have an opportunity to review any evidence dated after July 14, 2014 (247 pages worth, according to Plaintiff). *See* AR 39, 90–107, 110–31. The Court notes that, after weighing these opinions, the ALJ explicitly commented that "[t]here is no new and material evidence to contradict their opinion; therefore, the undersigned concludes that their opinion remains appropriate." AR 35 (emphasis added). However, after July 14, 2014, the records include Plaintiff's second in-patient hospitalization, Dr. Hunter's Medical Source Statement identifying marked limitations, and the more recent treatment records from Porter Starke Services and NorthShore Health Centers. On remand, the ALJ is directed to discuss why these subsequent records do not warrant an updated state agency opinion.

**D.     Award of Benefits**

Finally, the Court recognizes that Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for further proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, an immediate award of benefits is not appropriate.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in Plaintiff's Brief [ECF No. 14] and REVERSES the final decision of the Commissioner of Social Security. The Court REMANDS this matter for further proceedings consistent with this Opinion and Order. The Court DENIES Plaintiff's request to award benefits.

SO ORDERED on March 17, 2020.

                                                s/ Theresa L. Springmann
                                                CHIEF JUDGE THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT